UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

MIKE BUTLER,

                Plaintiff,

      v.                                         CAUSE NO. 3:19-CV-401 DRL-JPK

ANDREW M. SAUL,
Commissioner of the Social Security
Administration,

                Defendant.

## OPINION & ORDER

Mike Butler appeals from the Social Security Commissioner's judgment denying his application for disability insurance. *See* 42 U.S.C. § 405(g). His appeal was referred to Magistrate Judge Joshua P. Kolar, who recommended this court deny the requested relief and affirm the Commissioner's decision. Mr. Butler now objects to the recommended findings of the Magistrate Judge. Having reviewed the underlying record and Mr. Butler's objections, the court overrules his objections and accepts the decision of the administrative law judge.

## BACKGROUND

Mr. Butler suffers from a variety of physical impairments [R. 17-18]. On January 19, 2016, he filed an application for disability insurance benefits, alleging a disability onset date of November 4, 2015 [R. 15]. At the time of his alleged onset date, Mr. Butler was 51 years old [R. 24]. He has a high school education and has previous work experience as a millwright and a machine repair maintenance worker. *Id.*

Mr. Butler's claims received an administrative hearing before Administrative Law Judge Robert Long on November 15, 2017 [R. 15]. In an April 19, 2018 decision, the ALJ denied Mr. Butler's petition on the basis that he could not show he was disabled as defined by the Social Security Act [R.

15-26]. Thereafter, Mr. Butler challenged the decision by filing a request for review with the Appeals Council. After the Council denied his request, Mr. Butler timely filed a complaint here.

On July 24, 2020, Magistrate Judge Joshua P. Kolar recommended this court deny Mr. Butler's request for remand and affirm the ALJ's decision. Mr. Butler timely objected on various grounds. The Commissioner did not respond to the objections.

STANDARD

The court must "make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C); *see also* Fed. R. Civ. P. 72(b)(3). The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C).

The court is bound by a strict standard when reviewing an ALJ's decision under 42 U.S.C. § 405(g). Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusions," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge from the evidence to conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do his impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed as conclusively disabling, given the claimant's residual function capacity, is the claimant unable to perform his former occupation; (5) is the claimant unable to perform any other work in the national economy given his age, education, and work experience. 20 C.F.R. § 404.1520; *Young v. Secretary of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, when the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See Young*, 957 F.2d at 389.

Mr. Butler's arguments in front of the magistrate judge and his objections here all center around step five of this analysis.

A.     *The ALJ Used the Medical-Vocational Guidelines as a Framework.*

Mr. Butler objects to the magistrate judge's finding that the ALJ properly considered Mr. Butler's nonexertional limitations and whether they substantially limit the range of work he can perform. Specifically, he argues the ALJ failed to follow the binding mandate of 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2) and Social Security Rulings 83-12, 1983 SSR LEXIS 32, and 83-14, 1983 SSR LEXIS 33.

At step five of the sequential analysis, an ALJ must determine "whether the person can do any other work that exists in the national or regional economy." *Fast v. Barnhart*, 397 F.3d 468, 470 (7th Cir. 2005) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), (e)). "To this end, the ALJ may use the [Medical-Vocational Guidelines]," known as the "grids," "to determine whether other jobs exist in the national or regional economy that a claimant can perform." *Id.* The ALJ should be able to line up a claimant's

limitations and vocational factors in the appropriate grid table and discern a finding of disabled or not disabled. *See Haynes v. Barnhart*, 416 F.3d 621, 627 (7th Cir. 2005).

"The grids, however, generally take account only of exertional impairments." *Fast*, 397 F.3d at 470. When a claimant has nonexertional limitations imposed by a medically determinable impairment, the grid doesn't direct a conclusion of "disabled" or "not disabled." *See Fast*, 397 at 470; *Haynes*, 416 F.3d at 628 ("Appendix 2 clearly envisions cases . . . in which the claimant has a 'hybrid' RFC, and does not mandate the use of the grids in such cases"). Instead, the grids are used, "in conjunction with the definitions and discussions provided in the text of the regulations, as a framework for decisionmaking." SSR 83-14, 1983 SSR LEXIS 33 at 1; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(e)(2). "Where an individual exertional RFC does not coincide with the definitions of any one of the ranges of work as defined [by the regulations], the occupational base is affected and may or may not represent a significant number of jobs in terms of the rules directing a conclusion as to disability." SSR 83-12, 1983 SSR LEXIS 32 at 3. In which case, ALJ will consider the extent of any erosion of the occupational base and assess its significance. *Id.* The use of a vocational expert is sometimes necessary to make such an assessment. *See Haynes*, 416 F.3d at 629; *see also* SSR 83-14, 1983 SSR LEXIS 33 at 10, 17; SSR 83-12, 1983 SSR LEXIS 32 at 8.

The ALJ found Mr. Butler capable of light work as defined in 20 C.F.R. 404.1567(b), but found several nonexertional limitations, most notably a limitation to only occasional reaching, gripping, handling, and fine manipulation with the left upper extremity [R. 18]. Because Mr. Butler has nonexertional limitations, the grids act as a framework for the ALJ's decision and are not definitive. *See Fast*, 397 at 470; *Haynes*, 416 F.3d at 628. The ALJ recognized this in his decision [R. 24]. To determine the extent to which Mr. Butler's limitations eroded the light occupational base, the ALJ relied on the testimony of a vocational expert [R. 25]. *See* SSR 83-14, 1983 SSR LEXIS 33 at 17 (the

services of a vocational expert will be necessary when the ALJ doesn't have a clear understanding of how the limitations erode the occupational base).

The vocational expert testified that Mr. Butler's limitations would erode the occupational base (light) by about two-thirds [R. 65]. Even considering Mr. Butler's full limitations, the vocational expert reported approximately 3,050 combined jobs available in the Indiana economy [R. 69-70] and approximately 136,000 combined jobs in the national economy that Mr. Butler could perform [R. 62-63]. The vocational expert testified that an individual with Mr. Butler's limitations would be unable to perform positions at the unskilled, sedentary level [R. 64-65]. The ALJ considered the testimony of the vocational expert and found there exist a significant number of jobs in the national economy that Mr. Butler could perform [R. 25].

Mr. Butler argues that the ALJ did not address the extent to which his limitations erode the unskilled occupational base (light). Specifically, Mr. Butler argues that the ALJ should have compared the two grids (for light and sedentary work) and found Mr. Butler closer to the sedentary work grid, and thus disabled. But this line of argument has already been rejected in this circuit. *See Stanley v. Astrue*, 410 F. Appx. 974, 977 (7th Cir. 2011) ("an analogy to the Guidelines is just one factor that the ALJ should consider, together with testimony from a vocational expert and any other relevant evidence"); *see also Haynes*, 416 F.3d at 627 (affirming the ALJ's decision where claimant would have been disabled under the sedentary grid but could still perform a significant amount of jobs in the light occupational base).

The ALJ posed hypotheticals to the vocational expert to determine whether there were jobs existing in significant numbers in the national economy. In his decision he cited examples of occupations Mr. Butler can do functionally and vocationally and a statement of the incidence of such work. This was all the ALJ needed to do. *See Stanley*, 410 F. Appx. at 977. One of the regulations Mr. Butler points the court to states it just so plainly: "The ultimate question in the medical-vocational

evaluation of the capability to do other work is whether work than an individual can do functionally and vocationally exists in the national economy." SSR 83-10, 1983 SSR LEXIS 30 at 9-10.

Though the ALJ didn't specifically state the extent of the erosion, that is not grounds for reversal when he otherwise found Mr. Butler could occupations that exists in significant numbers in his region and nationally. *See, e.g.*, *Boone v. Barnhart*, 353 F.3d 203, 210 (3d Cir. 2003) (reversal isn't mandated "whenever the ALJ does not set out specific findings concerning the erosion of the occupational base if, as here, the ALJ has received the assistance of a VE in considering the more precise question whether there are a significant number of jobs in the economy that the claimant can perform").

It is true Mr. Butler's nonexertional limitations compromise the light occupational base, perhaps even completely eroding the sedentary positions contained therein; but the vocational expert still identified 3,050 light work jobs available in Indiana (136,000 nationally) for an individual with Mr. Butler's limitations. The magistrate judge's opinion lists several other instances when an ALJ properly relied on a vocational expert's testimony that there existed a significant number of jobs in the national economy that the claimant could perform. *See, e.g.*, *Stanley*, 410 F. Appx. at 977; *Cynthia P. v. Comm'r of Soc. Sec.*, 2019 U.S. Dist. LEXIS 16290, 13-15 (C.D. Ill. Feb. 1, 2019); *Sigite v. Colvin*, 2015 U.S. Dist. LEXIS 53805, 23-24 (C.D. Ill. Apr. 24, 2015). The court agrees with the Magistrate Judge's finding that the ALJ properly considered Mr. Butler's exertional and nonexertional limitations under the framework of the Medical-Vocational Guidelines.

B.       *The ALJ's Decision Accounted for Mr. Butler's Age.*

The court also agrees with the Magistrate Judge's finding that the ALJ considered whether Mr. Butler could adjust to the jobs identified by the vocational expert. Mr. Butler argues that the ALJ never considered how Mr. Butler's advancing age might affect his ability to adjust to other work. But the ALJ expressly considered Mr. Butler's age throughout the decision [R. 24, 25]. In fact, one of the ALJ's

explicit findings was that Mr. Butler "was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date" [R. 24]. The ALJ then immediately cites the precise regulation Mr. Butler argues he did not consider in the decision (20 C.F.R. § 404.1563). The ALJ's hypotheticals required the vocational expert to consider Mr. Butler's age [R. 61-63]. Considering Mr. Butler's age, with other factors, the ALJ found he was capable of successful adjustment to other work [R. 25]. The Magistrate Judge said it succinctly: "Simply put, the ALJ did consider Mr. Butler's age." ECF 18 at 16.

C.    *The ALJ Cited A Significant Number of Jobs in The National Economy.*

Mr. Butler argues the ALJ did not comply with the law when he found there was a significant number of jobs available in the national economy that Mr. Butler could perform. Specifically, Mr. Butler argues the regulations require the ALJ base his decision not national numbers, but "in terms of the region in which the claimant lives or several regions of the county." ECF 19 at 11 (citing 20 C.F.R. §§ 404.1560, 404.1566).

To find a claimant not disabled, an ALJ must decide work exists "in the national economy, regardless of whether such work exists in the immediate area in which [the claimant] lives . . . . For purposes of the preceding sentence (with respect to any individual), 'work which exists in the national economy' means work which exists in significant numbers either in the region where [the claimant] lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A). The vocational expert here testified to the incidence of jobs in both the Indiana economy, the state in which Mr. Butler resides, and in the national economy [R. 62-63, 69-70].

His argument is no mere textual gripe. Despite the relevant statutes, regulations, and agency decisions defining "work which exists in the national economy" to mean work existing in significant numbers either in the claimant's region or several regions of the country, *see* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 404.1566(b), 404.1560(c)(1); SSR 83-12, 1983 SSR LEXIS 32 at 11, the most recent circuit

law on this issue allows the ALJ to rely on job incidence anywhere in the country. *Compare Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015) ("if there is a significant number of jobs that the applicant for benefits can perform anywhere in the United States he is deemed not disabled") *and Herrmann v. Colvin*, 772 F.3d 1110, 1114 (7th Cir. 2014) ("if there is a substantial number of such jobs in the nation, the applicant's claim fails, no matter how few there are in his locality or region") *with Barrett v. Barnhart*, 368 F.3d 691, 692 (7th Cir. 2004) (*per curiam*) (observing vocational experts "almost always confine their testimony to indicating the number of such jobs that exist in the applicant's state"). As a result, courts throughout this circuit continue to send mixed messages on the issue. *Compare Dorothy B. v. Berryhill*, 2019 U.S. Dist. LEXIS 91276, 19-20 (N.D. Ill. May 31, 2019) (finding an ALJ can solely rely on jobs available in the national economy) (citing *Alaura*, 797 F.3d at 507) with *Yvonne S. v. Berryhill*, 2019 U.S. Dist. LEXIS 147932, 35-38 (N.D. Ind. Aug. 30, 2019) (finding the proposition that an ALJ can permissibly rely solely on national numbers "antithetical to a plain reading of the statute") (relying on *Barrett*, 355 F.3d at 1067).

Here, the debate is moot because the vocational expert cited regional numbers. Given the circuit's latest guidance on the subject and the vocational expert's testimony as to the incidence of positions both nationally and regionally, the court finds the ALJ's conclusion that there exist significant positions in the national economy was supported by substantial evidence. Mr. Butler's contention that a state is not a "region" in unavailing. *See Browning v. Colvin*, 766 F.3d 702, 708 (7th Cir. 2014) (presuming a "region" encompasses both a local area and the entire state); *see also Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) (the function of a vocational expert "is to determine which jobs the applicant for disability benefits can do and how many such jobs exist in the applicant's state").

Finally, Mr. Butler argues remand is required because one of the three occupations cited by the vocational expert, and relied on by the ALJ, cannot actually be performed by an individual with

Mr. Butler's limitations. The ALJ, relying on the vocational expert's testimony, cited three occupations that he believed Mr. Butler could perform: information clerk (DOT 237.367-018), usher (DOT 344.677-014, and furniture rental consultant (DOT 295.357-018) [R. 25, 63]. But according to the *Selected Characteristics of Occupations*, the position of information clerk requires frequent reaching and handling, *see* U.S. Dep't of Labor, *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* 98, 336 (4th rev. ed. 1993), though Mr. Butler is limited to only occasional use of those functions.

Assuming Mr. Butler truly cannot perform that position, that leaves approximately 1,750 positions regionally (*i.e.*, Indiana) and 70,000 positions nationally. These distilled numbers are still above what courts have considered a "significant" number of positions. *See, e.g.*, *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009) (it "appears to be well-established that 1,000 jobs is a significant number"); *Stanley*, 410 F. Appx. at 976 ("We have held that when a person can perform 1,000 or more jobs, then work exists in 'significant' numbers."); *Lee v. Sullivan*, 988 F.2d 789, 794 (7th Cir. 1993) (finding 1,400 jobs is a significant number). That isn't necessarily what Mr. Butler finds fault in. He argues that the ALJ erred by not following the administration's Program Operations Manual System (POMS). The POMS instructs ALJs to cite three occupations as examples of work the claimant could do given his limitations; however, it further instructs that an ALJ may cite fewer than three occupations when it is clear that jobs exist in significant numbers within fewer than three occupations. *See* POMS DI 25025.030(C)(1).

As the Magistrate Judge explained, the POMS isn't a regulation that has controlling force. *See Parker v. Sullivan*, 891 F.2d 185, 190 (7th Cir. 1989); *Darley v. Berryhill*, 2018 U.S. Dist. LEXIS 186621, 7 (N.D. Ill. Oct. 31, 2018) (finding the POMS direction to cite three occupations is, "at best, persuasive"); *Thompson v. Astrue*, 2013 U.S. Dist. LEXIS 13075, 13 (N.D. Ind. Jan. 31, 2013) ("the POMS manual does not impose judicially enforceable duties on an ALJ, it is considered persuasive").

Even if it were binding on the ALJ, he still followed the instruction. By finding two other occupations with significant numbers in the national and regional economies, the ALJ was not required to cite a third occupation. *See* POMS DI 25025.030(C)(1); *see also Darley*, 2018 U.S. Dist. LEXIS 186621 at 7 (finding that the ALJ followed the POMS directive finding two occupations that totaled 57,000 nationally and 3,400 regionally).

CONCLUSION

Having reviewed *de novo* those portions of the Magistrate Judge's findings to which Mr. Butler objects, the court OVERRULES the objections (ECF 19) and ADOPTS the report and recommendation submitted by Magistrate Judge Joshua P. Kolar (ECF 18). The court DENIES Mr. Butler's requested relief and AFFIRMS the ALJ's decision. This order terminates the case.

SO ORDERED.

September 11, 2020                    *s/ Damon R. Leichty*
                                      Judge, United States District Court